IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MILFORD WASHINGTON, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-25-327 |
| FEDERAL BUREAU OF PRISONS, et al., | * | |
| | * | |
| Respondents. | | |

***

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Respondents Federal Bureau of Prisons ("BOP"), Colette Peters, Timothy Barnett,[1] and Designation and Sentence Computation Center's ("DSCC") (collectively "Respondents") Motion to Dismiss or for Summary Judgment (ECF No. 5).[2] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant Respondents' Motion.

---

[1] Timothy Barnett's name is noted incorrectly as "Barnette" in the Petition and on the docket. (See Pet. Writ Habeas Corpus ["Pet."] at 1, ECF No. 1; Resp. Show Cause Order & Mot. Dismiss or Summ. J. ["Mot. Summ. J."] at 1 n.2, ECF No. 5). Because the Court is substituting the Warden of the Federal Correctional Institution at Cumberland for all Respondents (see Subsection II.B.1), the Court will use the correct spelling throughout this Memorandum Opinion, but the spelling need not be corrected on the docket.

[2] Self-represented Petitioner Milford Washington also filed a Motion for Discovery on October 3, 2025 (ECF No. 22), but he filed correspondence on January 8, 2026, asking that the Motion be dismissed, (Jan. 8, 2026 at 1, ECF No. 26). The Court, therefore, will deem the Motion to have been withdrawn.

## I.    BACKGROUND

On June 7, 2023, Washington pleaded guilty in the United States District Court for the Western District of Virginia to one count of knowingly transporting and delivering an unregistered firearm (specifically, a silencer) through interstate commerce in violation of 26 U.S.C. §§ 5841, 5871, and 5861(j). (June 7, 2023 J. at 3, ECF No. 1-3; Campbell Decl. ¶ 4, ECF No. 5-1).[3] Washington's Pre-Sentence Report ("PSR") described the facts of the crime as follows:

> Between July 30, 2021, and February 9, 2022, the defendant, Milford Thomas Washington sold seven (7) silencers, to an ATF agent posing [as] an undercover law enforcement capacity. On April 6, 2022, law enforcement discovered Washington in possession of additional silencers during the execution of a search warrant at his apartment in Maryland.
>
> Specifically, with respect to Count One of the Indictment, the items Washington sold were examined by the Bureau of Alcohol, Tobacco, Firearms, and Explosives Firearms Technology Criminal Branch. Both were found to have been capable of diminishing the sound report of a portable firearm (i.e., reduced the decibel level) and were determined to be [] "firearm silencers." Therefore, the silencers that Washington sold between July 30, 2021, and August 2, 2021, were in fact "firearms" as that term is defined in the National Firearms Act (NFA) and 18 U.S.C. § 921(a)(24).
>
> * * *
>
> At the time Washington engaged in this conduct, he knew that the silencers he sold required registration. And none of the silencers that Washington sold were registered as required by Title 26, Chapter 53, of the United States Code, or included a serial number that would have allowed them to be registered. Moreover, Washington had been previously convicted of a

---

[3] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

2

> felony offense such that he would not have been able to lawfully engage in the sale of these silencers.

(Campbell Decl. ¶ 10 (quoting PSR, United States v. Washington, No. 7:22-cr-22 (W.D.Va. June 9, 2023) (ECF No. 53))).

On June 9, 2023, the court sentenced Washington to seventy-two months' imprisonment followed by three years of supervised release. (Pet. Writ Habeas Corpus ["Pet."] at 10, ECF No. 1; Campbell Decl. ¶ 13). Washington is currently serving his sentence at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). (Pet. at 10; Campbell Decl. ¶ 4). His statutory release date is June 10, 2028, but his projected release date under the First Step Act ("FSA"), which accounts for earned credits towards his sentence, is August 30, 2027. (Inmate Data at 2, ECF No. 5-2).

On August 19, 2024, the BOP completed an offense review for Washington and determined that, under 28 CFR § 550.55(b)(5)(ii) and (iii) and Program Statement ("PS") 5162.05 § 3.a., Washington's conviction under 26 U.S.C. § 5861(j) is considered a "crime of violence" that makes him ineligible for early release because the crime "'involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives' and 'by its nature or conduct, presents a serious potential risk of physical force against the person or property of another.'" (Campbell Decl. ¶¶ 15, 17; PS 5162.05 at 1–2, 6, ECF No. 5-4). In reaching this conclusion, the BOP considered the fact that in Washington's PSR, the United States Probation Office recommended a four-level specific offense characteristic enhancement because Washington's offense involved between eight and twenty-four firearms. (Campbell Decl. ¶¶ 12, 16).

Washington asserts that PS 5162.05 categorizes his offense under 28 U.S.C. § 5861(j) (transporting an unregistered firearm) improperly as a crime of violence. (Pet. at 11). He contends that absent PS 5162.05, his sentence computation under the FSA would have entitled him to immediate release upon his graduation from the Residential Drug Abuse Program ("RDAP") in May 2025. (Id. at 32; Pl.'s Answer Resp'ts' Mot. Summ. J. ["Opp'n"] at 3, ECF No. 10). Washington does not seek judicial review of the BOP's decision to deny him early release but requests a declaration on whether "the BOP's rulemaking under 18 C.F.R. §550.55(b)(5)(ii) found in the corresponding P5162.05, 3.(3) and (4) gives 26 U.S.C. §5861(j) the effect that Congress plainly intended; and, whether or not the BOP's categorization of §5861 in P5162.05, 3.(3) and (4) is permissibly interpreted in 18 C.F.R. §550.55(b)(5)(ii)." (Pet. at 13–14).

Washington filed a Petition for Writ of Habeas Corpus and Declaratory Relief on January 31, 2025. (ECF No. 1).[4] Respondents filed a Motion to Dismiss or for Summary Judgment on May 12, 2025. (ECF No. 5). Washington filed an Opposition on June 2, 2025 (ECF No. 10), and Respondents filed a Reply on June 18, 2025 (ECF No. 14). The Court

---

[4] On November 24, 2025, Washington filed a second Motion for Leave to Proceed In Forma Pauperis ("IFP"), a second Petition for Writ of Habeas Corpus and for Writ of Mandamus, and a Motion for Temporary Restraining Order ("TRO"). (ECF Nos. 23, 24, 25). The Clerk docketed the second Petition and IFP Motion as Supplements to the initial Petition and IFP Motion, respectively. (ECF Nos. 23, 24). On February 9, 2026, Washington sent a letter to the Clerk, explaining that the second Petition and IFP Motion and the TRO Motion are "not acquainted with" the instant case and that he intended to open a new case with those filings. (Feb. 9, 2026 Letter at 1, ECF No. 28; Docket Sheet at 4, ECF No. 28-2). He also included an amended version of the second Petition, with exhibits. (ECF Nos. 28-3–28-8). The Court, therefore, will direct the Clerk to open a new case with the second Petition, the second IFP Motion, the TRO Motion, and the Amended Petition and accompanying exhibits. (ECF Nos. 23, 24, 25, 28-3–28-8).

granted Washington leave to file a Surreply, which he filed on September 2, 2025. (ECF No. 19).

## II.    DISCUSSION

### A.    <u>Conversion</u>

Respondents move to dismiss the Petition under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) <u>or</u> for summary judgment under Federal Rule of Civil Procedure 56. (Resps.' Show Cause Order & Mot. Dismiss or Summ. J. ["Mot. Summ J."] at 9–11, ECF No. 5). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. <u>See</u> <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Fed. Prac. & Proc. § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. <u>See</u> <u>Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the

5

movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.[5] See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement," Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961); however, non-compliance may be excused "if the nonmoving party has

---

[5] Although the title of Respondents' Motion does not contain the words "in the alternative," Respondents state expressly on page nine that "Respondents seek dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and Respondents move in the alternative for summary judgment under Fed. R. Civ. P. 56." (Mot. Summ. J. at 9 (emphasis added)).

adequately informed the district court that the motion is pre-mature and that more discovery is necessary," Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. (quoting 10B Wright, Miller & Kane, Fed. Prac. & Proc. § 2741, at 419 (3d ed. 1998)).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (quoting Young v. UPS, No. DKC-08-2586, 2011 WL 665321, at *20, (D.Md. Feb. 14, 2011)). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., 55 F.3d 943, 954 (4th Cir. 1995)).

In this case, under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court notified Washington of his right to respond to Respondents' Motion and advised that he may file affidavits, declarations, and exhibits along with his response. (See Rule 12/56 Notice at 1, ECF No. 6). Washington later filed an Opposition to Respondents' Motion along with an exhibit and an affidavit. (ECF Nos. 10–10-2). Accordingly, the Court will construe Respondents' Motion as one for summary judgment and will consider documents outside of the pleadings.

**B.**     **<u>Summary Judgment</u>**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." <u>Othentec Ltd. v. Phelan</u>, 526 F.3d 135, 140 (4th Cir. 2008) (quoting <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

C.    **Analysis**

Respondents contend that the Court should enter judgment in their favor because (1) the BOP, Peters, Barnett, and the DSCC are not proper respondents to a § 2241 habeas petition; (2) Washington's request for declaratory relief is not appropriate in the habeas context; and (3) the BOP has the authority to deny Washington RDAP early release based

on the nature of his conviction. (Mot. Summ. J. at 11–17).[6] The Court agrees on the first and third grounds and, therefore, will grant the Motion for Summary Judgment.

###    1.    Proper Respondents

First, Respondents aver that they are not the proper respondents to the Petition. (Id. at 11). This Court agrees. The proper respondent to a § 2241 habeas petition is the person who has "immediate custody" of the petitioner, i.e., the person with the power to produce the petitioner before the Court. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885)); see also 28 U.S.C. § 2242 (An application for writ of habeas corpus must allege "the name of the person who has custody over [the petitioner] and by virtue of what claim or authority, if known."); 28 U.S.C. § 2243 (A writ of habeas corpus "shall be directed to the person having custody of the person detained."). Here, none of the named respondents have immediate custody over Washington. The proper respondent is the Warden of FCI-Cumberland, where Washington is currently incarcerated. (Pet. at 10; Campbell Decl. ¶ 4); see also Padilla, 542 U.S. at 435 ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.").

---

[6] Respondents also argue that the Court is precluded from reviewing the BOP's decision to deny Washington early release. (Mot. Summ. J. at 18, ECF No. 5). Washington acknowledges as much in his Petition and Opposition. (Pet. at 13, ECF No. 1; Opp'n at 16, ECF No. 10). The Court, therefore, will not construe the Petition as raising such a claim and need not address its jurisdiction over such a claim.

Accordingly, all Respondents will be substituted for the Warden of FCI-Cumberland, who will be the sole Respondent.

### 2.   Request for Declaratory Relief

Second, Respondent argues that Washington's request for "declaratory relief relating to the BOP's application of 18 U.S.C. § 3621" is not appropriate because he "is not specifically challenging the very fact or duration of [his] physical imprisonment." (Mot. Summ. J. at 11–12). This Court disagrees. Although "the traditional remedial scope of the writ [of habeas corpus] has been to secure absolute release—either immediate or conditional—from . . . custody," Wilborn v. Mansukhani, 795 F.App'x 157, 164 (4th Cir. 2019) (quoting Lee v. Winston, 717 F.2d 888, 892 (4th Cir. 1983)), courts have permitted habeas petitioners to seek declaratory relief related to the BOP's rulemaking authority, as Washington does here, see, e.g., Minotti v. Whitehead, 584 F.Supp.2d 750, 754, 765–66 (D.Md. 2008) (declaring challenged BOP regulations lawful and denying habeas petitions in which petitioners sought declaratory relief); Wiggins v. Wise, 951 F.Supp. 614, 622 (S.D.W.Va. 1996) (granting habeas petition as to petitioner's request for declaratory judgment that PS 5162.02 § 9 was void); Jones v. Zenk, 495 F.Supp.2d 1289, 1291, 1310 (N.D.Ga. 2007) (granting habeas petition in which petitioner sought declaration that challenged BOP regulations were unlawful). Washington, therefore, does not fail to state a valid claim for declaratory relief solely by virtue of the type of petition he has filed.

### 3.   Offense Categorization Under PS 5162.05

As to the merits of Washington's claims, Washington asserts that PS 5162.05 impermissibly categorizes his offense under 26 U.S.C. § 5861(j) as a crime of violence for

the purpose of determining his eligibility for an RDAP sentence reduction. (Pet. at 13–25). Respondent argues that the BOP is permitted to use categorical exclusions in determining eligibility for RDAP sentence reductions and that Washington's conviction under 26 U.S.C. § 5861(j) is properly considered an offense involving the "carrying, possession, or use of a firearm" for purposes of RDAP sentence reduction eligibility. (Mot. Summ. J. at 12–15). This Court finds that the BOP has acted within its discretion by categorizing 26 U.S.C. § 5861(j) as a "crime of violence" in PS 5162.05.

Under 18 U.S.C. § 3621, the BOP is required to make substance abuse treatment available to all inmates with substance abuse issues. See 18 U.S.C. §§ 3621(b), (e). In light of this mandate, the BOP created RDAP, a treatment program that is offered on a volunteer basis for inmates who have diagnosable and verifiable substance use disorders. (Campbell Decl. ¶ 5). As an incentive to join RDAP, inmates convicted of nonviolent offenses who complete the nine-month program may receive a sentence reduction of up to one year at the BOP's discretion. See 18 U.S.C. § 3621(e)(2)(B); Lopez v. Davis, 531 U.S. 230, 241 (2001) (concluding that 18 U.S.C. § 3621(e)(2)(B) gives the BOP "the authority, but not the duty," to grant early release to inmates who complete RDAP successfully). The BOP implements this early release incentive through 28 C.F.R. § 550.55, which excludes certain inmates from the early release incentive, including those who have a current felony conviction for "[a]n offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives," or "[a]n offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another." 28 C.F.R. § 550.55(b)(5)(ii)–(iii).

Here, Washington argues that in implementing 18 U.S.C. § 3621 and 28 C.F.R. § 550.55, the BOP has categorized his offense under 26 U.S.C. § 5861(j) impermissibly as a "crime of violence" in PS 5162.05. (Pet. at 23–25). In his estimation, his offense did not involve firearms or a risk of harm to others and, therefore, cannot be deemed "[a]n offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives," or "[a]n offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another," under 28 C.F.R. § 550.55(b)(5)(ii) and (iii). (Pet. at 23–25). For the reasons set forth below, these claims hold no merit.

First, to the extent Washington challenges the BOP's authority to implement categorical exclusions from RDAP early release like those in 28 C.F.R. § 550.55(b)(5)(ii) and (iii), the Supreme Court held in Lopez v. Davis, 531 U.S. 230 (2001), that such categorical exclusions are permissible because, as the decisionmaker, the BOP "has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Id. at 244 (quoting Am. Hosp. Assn. v. NLRB, 499 U.S. 606, 612 (1991)). The Court concluded that the BOP acts within its discretion by excluding from RDAP early release any "inmates who possessed a firearm in connection with their current offense" and that the BOP need not "rely . . . on case-by-case assessments" in determining an inmate's eligibility. Id. at 240, 243. Thus, the BOP has the discretion to decide that Washington is ineligible for early release based on the nature of his conviction, without reference to the type of firearm involved.

Contrary to Washington's assertions, this conclusion remains the same under Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). (See Pet. at 15–16). Prior to Loper Bright, courts were required to give "substantial deference" to administrative agencies' interpretations of statutes that Congress had entrusted those agencies to administer by regulation. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843–44 (1984). When a statute was ambiguous, the Court's role was to examine whether the agency's implementation of the statute through regulation was reasonable. Id. at 843. In Loper Bright, the Supreme Court overturned Chevron such that, under the Administrative Procedure Act, courts may not defer to an agency's interpretation of the law simply because a statute is ambiguous. 603 U.S. at 391–94. Instead, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . ." Id. at 412.

Here, the relevant statute, 18 U.S.C. § 3621, is not ambiguous—it gives the BOP "the authority, but not the duty," to reduce Washington's sentence following his completion of RDAP. Lopez, 531 U.S. at 241. And the outcome remains the same even if the statute was ambiguous. Loper Bright does not "call into question prior cases that relied on the Chevron framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite the [Supreme] Court's change in interpretive methodology." 603 U.S. at 376; see also Skanes v. Carter, No. MJM-24-570, 2025 WL 754335, at *5 (D.Md. Mar. 10, 2025) ("Even post-Loper-Bright, courts should defer to an agency's interpretations when a statute expressly delegates interpretative authority to that agency."). Lopez, therefore, remains binding precedent, and the BOP

14

retains discretion to categorically exclude from RDAP release those whose current convictions involved firearms. See Coffie v. Warden, FCI Cumberland, No. DLB-24-2837, 2025 WL 2695716, at *7–8 (D.Md. Sep. 22, 2025).

Second, to the extent Washington challenges the BOP's categorization of his offense as a "crime of violence" in PS 5162.05, this Court finds that it is a proper exercise of the BOP's discretion under 18 U.S.C. § 3621. PS 5162.05 is an "internal agency guideline that has not been subjected to the rigors of notice and comment rulemaking." Cunningham v. Scibana, 259 F.3d 303, 306 (4th Cir. 2001). As such, it is "not given the force of law," but it is "entitled to deference" under Skidmore v. Swift & Co., 323 U.S. 134 (1944):

> [An agency administrator's] rulings, interpretations and opinions . . . while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Id. at 140. As in Cunningham v. Scibana, 259 F.3d 303 (4th Cir. 2001), where the Fourth Circuit upheld the BOP's categorization of offenses under 18 U.S.C. § 1365(a)—tampering with consumer products—as crimes of violence, this Court finds that the BOP's decision to categorize any offense under 26 U.S.C. § 5861(j) as a crime of violence is based on the BOP's "body of experience and informed judgment" regarding "various penological objectives, including punishment and rehabilitation." Cunningham, 259 F.3d at 308 (quoting Skidmore, 323 U.S. at 140).

15

Despite Washington's contentions that a silencer is not a "firearm," the statute under which he pleaded guilty and was convicted states that he "transport[ed], deliver[ed], or receiv[ed] [a] <u>firearm</u> . . . ." 26 U.S.C. § 5861(j) (emphasis added). Indeed, the National Firearms Act defines a silencer as a "firearm" for purposes of 26 U.S.C. § 5861(j), among many other statutes. <u>See</u> 26 U.S.C. § 5845 (including "silencer (as defined in [18 U.S.C. § 921])" in the definition of a "firearm" for 29 U.S.C. §§ 5801–5872); 18 U.S.C. § 921(a)(3)(C) (including "any firearm muffler or firearm silencer" in the definition of a "firearm"). Thus, the BOP has interpreted the term "firearm" no broader than the court did in convicting Washington under 26 U.S.C. § 5861(j) for selling and transporting silencers. Moreover, the Fourth Circuit has held that "[w]hile the [BOP's] definition of a crime of violence may not be consistent with court interpretations of 18 U.S.C. § 924(c)(3)," the statute that defines crimes of violence, "it is, nevertheless, a permissible and reasonable interpretation of the statute from which the [BOP] derived its authority." <u>Minotti</u>, 584 F.Supp.2d at 763–64 (quoting <u>Pelissero v. Thompson</u>, 170 F.3d 442, 447 (4th Cir. 1999)).

Additionally, as the Supreme Court noted in <u>Lopez</u>, the BOP has "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony," which, again, is apparent in this case from the plain language of 26 U.S.C. § 5861(j), "suggests [the inmate's] readiness to resort to life-endangering violence and therefore appropriately determines the early release decision," <u>Lopez</u>, 531 U.S. at 244. The BOP rearticulated its public safety rationale for categorically excluding inmates convicted of "offense[s] that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives" as recently as 2016, explaining that "commission

16

of such offenses illustrates a readiness to endanger the public. Denial of early release to all inmates convicted of these offenses rationally reflects the view that, in committing such offenses, these inmates displayed a readiness to endanger another's life." Drug Abuse Treatment Program, 81 Fed. Reg. 24484-02, 24487 (Apr. 26, 2016). Overall, the Court is "persuaded by the BOP's decision to classify [Washington's] crime as violent in all cases because that decision is supported by experience and sound and consistent reasoning." Cunningham, 259 F.3d at 308–09.

## III.    CONCLUSION

For the reasons set forth above, the Court will GRANT Respondent's Motion to Dismiss or for Summary Judgment, which the Court construes as a Motion for Summary Judgment (ECF No. 5). The Clerk will be directed to open a new case with Washington's second Petition for Writ of Habeas Corpus and for Writ of Mandamus (ECF No. 24), second Motion for Leave to Proceed In Forma Pauperis (ECF No. 23), Motion for Temporary Restraining Order (ECF No. 25), and Amended Petition for Writ of Habeas Corpus, with accompanying exhibits (ECF Nos. 28-3–28-8). A separate Order follows. Entered this 9th day of March, 2026.

_____/s/_____

George L. Russell III
Chief United States District Judge
